# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

LARRY MITCHELL,          )
#264463,                    )
                            )     CIVIL ACTION NO. 9:14-4539-RBH-BM
            Petitioner,   )
                            )
v.                          )     **REPORT AND RECOMMENDATION**
                            )
ROBERT STEVENSON,   )
WARDEN,              )
                            )
           Respondent.  )
_____)

      Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on November 20, 2014.[1]

      The Respondent filed a return and motion for summary judgment on February 9, 2015. As the Petitioner is proceeding pro se, a Roseboro order was filed on February 10, 2015, advising the Petitioner that he had thirty-four (34) days to file any material in opposition to the motion for summary judgment. Petitioner was specifically advised that if he failed to respond adequately, the motion for summary judgment may be granted, thereby ending his case. After Petitioner received an extension of time and failed to respond, the undersigned recommended dismissal of this case for failure to prosecute on May 19, 2015. Subsequent to the issuance of that Report and Recommendation, however, Petitioner filed a memorandum in opposition on May 21, 2015, and the

---

[1]Since the prison room mail stamp is not on the envelope, the date used is from the certificate of service. Houston v. Lack, 487 U.S. 266, 270-276 (1988).

1



Report and Recommendation was vacated that same day.[2]

This matter is now before the Court for disposition.[3]

**Procedural History**

Petitioner was indicted in Richland County in July 2008 for armed robbery [Indictment No. 08-GS-40-4248]. (R.pp. 113-114). Petitioner was represented by Micah Leddy, Esquire, and pled guilty to the charge as indicted on September 8, 2009. (R.pp. 1-39). The plea judge sentenced Petitioner to eighteen (18) years confinement in prison, with credit for time served. (R.pp. 37-38, 115).

Petitioner then sought a direct appeal of his conviction and sentence pursuant to Weathers v. State, 459 S.E.2d 838 (S.C. 1995), by filing a notice of appeal on September 16, 2009. See Court Docket No. 17-2.[4] The South Carolina Court of Appeals dismissed Petitioner's direct appeal pursuant to S.C. Appellate Ct. R. 203(d)(1)(B)(iv) in an Order issued on October 29, 2009. See Court Docket No. 17-3.[5] The Remittitur was sent down on November 17, 2009. (R.p. 40).

On August 20, 2010, Petitioner filed an application for post-conviction relief

---

[2]Apparently not realizing that the Report and Recommendation had been vacated, Petitioner filed an objection on June 9, 2015 including the same memorandum in opposition as an attachment to his objection.

[3]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(c)and (e), D.S.C. The Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[4]Pursuant to Weathers v. State, a defendant's inquiry regarding his right to appeal from a conviction resulting from a guilty plea constitutes an "extraordinary circumstance" requiring counsel to inform defendant of his appellate rights.

[5]Pursuant to S.C. Appellate Ct. R. 203(d)(1)(B)(iv), an appeal may be dismissed where the notice of appeal fails to make a sufficient showing of an explanation of legal issues preserved for review. State v. Thrift, 661 S.E.2d 373 (S.C. 2008).



("APCR") in state circuit court; <u>Mitchell v. State of South Carolina</u>, No. 2010-CP-40-5672; in which

he raised the following issues:

     (a) Ineffective Assistance of Counsel.

     (b) Ineffective Assistance of Appellate Counsel.

(R.pp. 43, 46-49).

Petitioner was represented in his APCR by Tommy A. Thomas, Esquire, and an evidentiary hearing

was held on Petitioner's application on January 9, 2012.  (R.pp. 56-101).  In an order filed February

2, 2012 (dated January 27, 2012), the PCR judge denied relief on the APCR in its entirety.  (R.pp.

102-112).

     Petitioner then filed a timely appeal of the PCR court's order.  Petitioner was

represented on appeal by Breen Richard Stevens, Esquire, of the South Carolina Commission on

Indigent Defense, Division of Appellate Defense, who filed a <u>Johnson</u>[6] petition seeking to be relieved

and raising the following issue:

> Whether the PCR court reversibly erred by holding Counsel did not provide
> ineffective assistance for failing to fully investigate Petitioner's history of mental
> illness, and failing to inquire whether his own client was properly medicated at a time
> of the guilty plea when in fact Petitioner was without his medication for schizophrenia
> for approximately one week before the plea.

<u>See</u> Johnson Petition, p. 2 (Court Docket No. 17-5, p. 3).

Petitioner also filed a <u>pro se</u> petition for certiorari citing no new grounds, but renewing his challenge

to the voluntariness of his guilty plea.  <u>See</u> Petition, p. 2 (Court Docket No. 17-6).  On September 30,

2014, the South Carolina Court of Appeals denied Petitioner's writ of certiorari and granted counsel's

---

[6]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see also</u> <u>Anders v. State of California</u>, 386
U.S. 738, 744 (1967).

3



petition to be relieved.  <u>See</u> Court Docket No. 17-7.  The Remittitur was sent down on October 17, 2014.  <u>See</u> Court Docket No. 17-8.

In his Petition for writ of habeas corpus filed in this United States District Court, Petitioner raises the following issues:

**Ground One:** Ineffective Assistance of Trial Counsel.

**Supporting Facts:** Trial Counsel T. Micah Leddy, colluded with the solicitor, and court to have the applicant admit that he gave the impression to the robbery victim that he possessed a weapon to "qualify" the applicant for a plea to armed robbery and permitted the applicant's plea to be involuntary, unintelligent and unknowing in violation of his "Substantive Due Process Rights."

**Ground Two:** Ineffective Assistance of Appellate Counsel.

**Supporting Facts:** Appellate counsel failed to perfect the appellate appeal process by not meeting 20 days deadline required by S.C. Appellate Court Rule 203(d)(B)(iv).

<u>See</u> <u>Petition</u>, pp. 6-8.

Petitioner also filed a memorandum of law in support of his petition for habeas corpus relief, citing that trial counsel was ineffective, that his plea was involuntary and unintelligibly made, and that he was denied due process.  Within his memorandum, Petitioner expands upon his ineffective assistance of counsel claim to include a claim that he had mental competency issues at the time of his plea which counsel mishandled and which rendered his guilty plea involuntary.  <u>See</u> Court Docket No. 1-4, pp. 5-8.

<u>**Discussion**</u>

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56, Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11.  Further, while the federal court is



charged with liberally construing pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

## I.

## (Ground One)

In Ground One of his Petition, Petitioner argues that his trial counsel was ineffective when he failed to object to the armed robbery indictment when he was not in fact armed, and when counsel misrepresented Petitioner's mental history at the plea hearing and mishandled the issue of Petitioner's mental health issues, rendering Petitioner's plea involuntary.

Petitioner raised these issues in his APCR, where Petitioner had the burden of proving the allegations in his petition. Counsel also raised a part of his claim, relating to counsel misrepresenting his mental history and his plea being involuntary, in the PCR appeal to the State Court of Appeals.[7] <u>Butler v. State</u>, 334 S.E.2d 813, 814 (S.C. 1985), <u>cert. denied</u>, 474 U.S. 1094 (1986); <u>see also</u> Court Docket Nos. 17-5 and 17-6. The PCR court rejected these claims, making

---

[7]Although Respondent argues that any issues not specifically raised in Petitioner's PCR <u>Johnson</u> appeal are procedurally barred from consideration by this Court, "an appellate court is required to review the entire record, including the complete trial transcript, for any *preserved* issues with potential merit." <u>Jamison v. State</u>, 765 S.E.2d 123, 128 (S.C. 2014)[Finding a petition filed pursuant to <u>Johnson</u> is the post-conviction relief equivalent of a direct appeal file pursuant to <u>Anders</u> and applying <u>Anders</u> standard to review under <u>Johnson</u>]. Therefore, as the issue of allegedly ineffective assistance of counsel based on counsel's failure to contest the charge of "armed" robbery was addressed by the PCR judge in his order, the undersigned does not find the any of the issues raised in Ground One of the Petition are procedurally barred.



relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80

(1976), as amended. See Mitchell v. State of South Carolina, No. 2010-CP-40-5672.

    Specifically, the PCR judge found that: 1) Petitioner testified that counsel improperly

withheld information from the plea court pertaining to a second mental evaluation Petitioner

underwent which would have shown Petitioner was not mentally competent to enter a guilty plea at

the time he did; 2) Petitioner went on to say he has a history of schizophrenia for which he is

regularly medicated, but that on the day of his plea he was unable to take his medication and was

therefore unaware of what he was doing during the plea hearing; 3) Petitioner's trial counsel testified

that he overtook representation of Petitioner from the public defender's office sometime shortly after

entering private practice in April of 2009, at which time he discussed the case with the public

defender and received all discovery materials; 4) counsel went on to say, because Petitioner never

seemed interested in accepting a plea offer, that he prepared the case for trial from the outset of his

representation; 5) counsel stated that he reviewed the indictments and elements of the offenses with

Petitioner, as well as Petitioner's prior criminal record which counsel agreed was "pretty extensive";

6) counsel articulated that he was aware of Petitioner's mental history and conceded Petitioner had

been evaluated by the Department of Mental Health which issued a report finding Petitioner mentally

competent to stand trial; 7) counsel stated he did not believe introducing the medical report was

necessary as it showed Petitioner was competent and would only have painted Petitioner as a self-

medicated schizophrenic who committed a robbery while high on crack cocaine; 8) counsel stated

that during previous phone calls with Petitioner, he was able to tell when Petitioner was not

medicated because Petitioner would be much "more animated"; 9) however, counsel went on to say

he had no doubt Petitioner was competent and fully aware of what he was doing on the day of his



plea; 10) trial counsel's testimony was credible; 11) conversely, Petitioner's testimony was not credible; 12) counsel advised Petitioner of all relevant issues regarding the charges he was facing, including the facts giving rise to the charges, the indictments, the elements of the offenses, potential sentences he was facing, and the potential of receiving a life without parole sentence if he lost at trial; 13) additionally, counsel relayed all plea offers from the state to Petitioner, and gave him all of the information and advice necessary to make an intelligent and voluntary decision whether to enter his plea; 14) based on a review of the transcript and the testimony presented at the PCR hearing, the PCR Court found no merit in Petitioner's allegation that he was unaware of what he was doing on the day of his plea because he was not medicated; 15) further, Petitioner failed to provide any evidence to prove a secondary mental evaluation was in fact performed, or to show that the results of that evaluation would have made a difference in Petitioner's decision to plea; 16) Petitioner failed to prove deficiency and resulting prejudice in this regard; 17) Petitioner also alleged that his counsel was ineffective for failing to discuss potential suppression of the surveillance video from the robbery, as well as in failing to challenge the armed robbery charge; 18) Petitioner testified he believed he was improperly charged with armed robbery based on the evidence because there was nothing in the surveillance videotape to prove that he represented to the clerk he was armed with a weapon during the course of the robbery; 19) specifically, Petitioner stated the video did not show him place his hands into the pocket of his sweatshirt until after the clerk had handed Petitioner the money, and therefore there was no charge; 20) counsel testified he believed that one portion of the videotape would "sink" Petitioner's case and did investigate potential suppression, but ultimately concluded that there were no valid grounds upon which to move to suppress the tape; 21) counsel articulated that throughout his representation, the armed robbery charge was continuously a point of contention



between himself and Petitioner as the surveillance video did not show Petitioner holding a weapon, nor could Petitioner be seen with his hands in his pockets until after the clerk passed the money to Petitioner; 22) counsel continued, saying it would have ultimately been a jury question in determining whether the clerk had believed Petitioner had a gun or weapon during the robbery, but based on a pre-trial interview with the eyewitness in the store and the clerk's statement to the police, counsel did not believe the jury would give Petitioner the benefit of the doubt; 23) Petitioner failed to prove counsel was ineffective based on these allegations; 24) counsel investigated a possible motion to suppress the videotape, ultimately finding no valid reason to object; 25) the PCR Court agreed with counsel's conclusion and found counsel's performance was not unreasonable in this regard; 26) further, Petitioner failed to present any valid grounds upon which the videotape could have been suppressed, thereby failing to prove counsel's deficiency; 27) additionally, Petitioner failed to establish that the tape would have been suppressed had such a motion been made, thereby failing to prove prejudice; 28) Petitioner was properly charged with armed robbery under the circumstances, and counsel was not ineffective in failing to object to the armed robbery charge or otherwise secure a plea offer to a lesser offense; 29) the South Carolina Court of Appeals held under the "Continuance Offense Theory", an armed robbery has occurred "not only if the perpetrator uses force or intimidation to "take" possession of the property, but also if force or intimidation is used to retain possession immediately after the taking, or to carry away the property, or to facilitate escape; 30) the Court of Appeals has rejected the minority view that requires the use or threatened use of a dangerous weapon to precede, or be contemporaneous with, the actual taking to prove guilt of armed robbery; 31) Petitioner's contention that the surveillance video only showed him placing his hands in his pocket after the exchange of the money was insufficient as a defense to the charge of armed robbery; 32)



counsel was not ineffective for failing to object; 33) additionally, in the plea transcript, the solicitor referenced Petitioner's written confession to police in which Petitioner conceded it was possible that the store clerk reasonably believed he was armed during the robbery based on his representations; 34) this admission, coupled with the anticipated testimony of the store clerk and eyewitness, would likely have been enough to firmly convince a jury beyond a reasonable doubt that the store clerk reasonably believed Petitioner was armed with a weapon at the time of the robbery; 35) finally, Petitioner contended both counsel and the plea judge improperly coerced him into entering the guilty plea by advising Petitioner he was facing a potential life without parole sentence if convicted of the crimes at trial; 36) counsel testified that this case was going to be a trial from the outset of his representation and he did not know what made the Petitioner decide to accept the plea when he did; 37) counsel testified that he had sufficient time to prepare the matter for trial during the several months of his representation and was fully prepared to proceed to trial on the day of the plea had Petitioner wished to go forward; 38) counsel plainly stated that it was ultimately Petitioner's sole decision to accept the plea, which was made without any coercion, threats or promises from counsel or the plea judge; 39) counsel's testimony was credible, while conversely Petitioner was not credible; 40) further, the PCR Court found Petitioner's plea to have been entered freely and voluntarily after being adequately advised of all relevant issues by competent counsel acting within the range of reasonableness required of criminal defense attorneys; 41) Petitioner's fear of realistic potential sentences he was facing at trial as communicated by counsel and the trial court was not tantamount to coercion, nor did that information render Petitioner's guilty plea involuntary or unintelligent; 42) further, counsel made reasonable and diligent efforts to prepare Petitioner's case for trial including reviewing the discovery, interviewing witnesses, preparing defense theories, and investigating Petitioner's history of drug use

9



and mental health issues; 43) counsel was fully prepared to present Petitioner's case to a jury on the day of the plea; 44) however, Petitioner ultimately made the voluntary decision to take the benefit of an advantageous plea offer rather than proceed to trial; 45) Petitioner failed to show his counsel was deficient in these regards, or that such alleged deficiencies resulted in prejudice; 46) Petitioner's guilty plea was entered knowingly and voluntarily after being fully and adequately advised by competent counsel acting within the range of competence demanded of attorneys in criminal cases; 47) Petitioner did not establish any constitutional violations or deprivations that required the court to grant his petition; 48) except as discussed above, the Court found Petitioner failed to raise any other allegations cognizable in PCR at the hearing, and, thereby, waived them; 49) Petitioner's failure to address these issues at the hearing indicated a voluntary and intentional relinquishment of his right to do so; and 50) therefore, any and all remaining allegations were denied and dismissed. (R.pp. 106-111).

Substantial deference is to be given to the state court's findings of fact. Evans v. Smith, 220 F.3d 306, 311-312 (4th Cir. 2000), cert. denied, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], cert. denied, 532 U.S. 925 (2001); Bell v. Jarvis, 236 F.3d 149 (4th Cir. 2000)(en banc), cert. denied, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  See also Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000), cert. denied, 531 U.S. 1095 (2001); Frye v. Lee, 235 F.3d 897, 900 (4th Cir. 2000), cert. denied, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct



under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. Strickland v. Washington, 466 U.S. 668, 698 (1984); Pruett v. Thompson, 996 F.2d. 1560, 1568 (4th Cir. 1993), cert. denied, 114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)). Nevertheless, with regard to the ineffective assistance of counsel claims that were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000). See Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"]. Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694. In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective. First, the Petitioner must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment. Second, the Petitioner



must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial. Further, where a guilty plea is involved, in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985). Here, after careful review of the record and the arguments presented, the undersigned finds and concludes that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard, or that his plea was unknowing or involuntary. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

With respect to Petitioner's mental health, the record reflects that at his plea hearing, Petitioner testified that he had been diagnosed with schizophrenia and had been seeking and/or getting help for the disease over the last year, while Petitioner's counsel testified that Petitioner had gotten an evaluation, and that although he had been diagnosed with schizophrenia, he had been found competent and criminally responsible. (R.pp. 2-3). Counsel further testified that another evaluation had also been done through the Department of Disability, which had also diagnosed him with schizophrenia, but that "according to the state and the evaluation we had done, he's competent to enter a plea or go to trial". (R.p. 3). Counsel testified that he was not aware of any mental or physical disabilities which would affect Petitioner's ability to proceed with the plea, and Petitioner affirmed to the Court that he understood that he was in Court for the armed robbery charges. (R.pp. 3-5). Petitioner's counsel testified that the State had shared its discovery in the case, that counsel had reviewed the discovery, and opined that if the case went to trial that a conviction was probable. (R.p. 4). With respect to the armed robbery charge, Petitioner testified that although he did not have a



weapon, the victim probably believed that he had a deadly weapon, because once she gave him the money, then he put his hands in his pockets, and when the Court inquired if Petitioner made some type of representation, Petitioner testified that " . . . Yes, ma'am. So that probably would have her thinking at least that it would be dangerous, so –". The Court then explained to the Petitioner that it didn't matter whether or not he had a deadly weapon, only whether he represented by body language or words or conduct to make somebody be in fear, and Petitioner affirmed that he understood that and that he did make the victim believe that. (R.pp. 6-7).

Petitioner then affirmed that he wanted to plead guilty, that no one had forced or threatened him to plead guilty, and that he was pleading of his own free will. Petitioner testified that he had had enough time to speak with his attorneys to understand the charges, the maximum possible penalties, his constitutional rights, and that he understood those conversations. Petitioner also testified that he understood that by pleading guilty he was giving up all of his constitutional rights including the right to remain silent as well as go to a jury trial. (R.pp. 7-8). The Court also confirmed with the Petitioner that he understood that everyone was prepared to go forward and a jury pool from which to select his jury was even downstairs. Petitioner then affirmed to the Court that he knew that the State had the burden of proving his guilt beyond a reasonable doubt, that he did not have to testify, that not testifying could not be used against him, and that he did not have to even put up a defense, but that he wanted to give up all those rights including his right to a jury trial. (R.pp. 8-9).

Petitioner also testified that he was satisfied with his counsel's services, that they had answered all of his questions, concerns, and "just anything" that he wanted to know at the time of his plea. (R.pp. 9-10). The Court also explained to Petitioner the future potential consequences of this conviction if he later was to face a charge where papers were served on him of a sentence of life

13



without the possibility of parole since his plea would constitute a most serious offense, although the Court reiterated, however, that was not a potential sentence at his plea though. (R.pp. 10-12). The Petitioner affirmed to the Court that part of the reason that he was pleading guilty was that a burglary first charge, which had a sentence of between fifteen (15) years and life, was being dismissed, and that based on his plea he would only be facing a sentence of between ten (10) to thirty (30) years. (R.p. 12). Petitioner also affirmed that he had no complaints against the arresting officers or the solicitor's office, and that everyone was just doing their jobs. (R.p. 13).

Petitioner testified that no one had forced him, coerced him, or threatened him to plead guilty, and that he was doing so voluntarily. (R.pp. 13-14). The Solicitor advised the court that a burglary first charge and a burglary second charge would be dismissed based upon Petitioner's plea to the armed robbery, and Petitioner confirmed that other than the dismissal of his other charges, he had not been promised anything. (R.pp. 4, 14). Petitioner also stated that he had testified truthfully at the plea hearing and that he "understood everything because [the Court] broke it down to me, and I want to thank you for that." (R.p. 14).

Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel; Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167, 171 (4th Cir. 1981); and the United States Supreme Court has ruled that "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). Here, as is discussed more fully below, Petitioner has provided no evidence to show ineffective assistance of counsel in his case, and has further failed to provide the Court with any



evidence to show that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open court. Blackledge, 431 U.S. at 73-74 ["The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."]. Petitioner has therefore failed to present evidence sufficient to show that the state court's rejection of these claims was unreasonable. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Bell v. Jarvis, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].

At the PCR hearing, Petitioner testified that he did not believe that his counsel was adequately prepared for trial, and also testified that he did not believe that he was guilty of armed robbery because that he never had his hands in his pocket, had no weapon, and never threatened anyone. (R.pp. 62-63). Petitioner testified that he only asked the clerk for money, that she gave him money, and he then put his hand in his pocket with the money and left the scene. (R.pp. 63-64). Petitioner testified that he viewed the video from the scene with his counsel, and that the video showed him entering the store with his hands out of his pockets, it shows him leaning on the counter when the clerk was about to give him the money, and it shows him putting the money in his pocket, turning away, and leaving with his hand in his pocket as he left the scene. Petitioner also testified that he did not threatened the clerk in any way and he never acted or pretended to have a gun or weapon. (R.p. 64). Even so, Petitioner testified that his counsel told him that he was going to get



15

life for burglary first and that if they found him guilty on armed robbery, he had no possible chance of getting his case overturned, so he should plead to armed robbery. (R.p. 66).

Petitioner also testified that he was diagnosed as schizophrenic and had two separate mental examinations. However, while an examination by the Department of Mental Health found him competent and able to stand trial, Petitioner contends that the second examination was never shown to the plea judge because counsel said that they would send him to a mental health hospital. (R.pp. 66-67). Petitioner also testified that when he was on his medication that he could understand things, but that he was not on his medication at the time of his guilty plea and had been off his medication for about a week at that time. (R.pp. 67-68). Petitioner testified that he did not have his medicine on the day of the plea because he had left it at his house when he felt coerced to leave because of the solicitor's office intimidating him (apparently referring to service of the notice of facing a potential of life sentence if convicted). (R.p. 77). Petitioner testified that he only told the Court that he understood what was going on during the guilty plea because his counsel told him to say that, and to say that he had his hand in his pocket. However, Petitioner reiterated that he did not have a deadly weapon and that he told the plea judge that he was pleading guilty to not having a deadly weapon. (R.pp. 69-70).

With regard to his hand being in his pocket, Petitioner testified that once he received the money, he put it into the middle pocket in his sweatshirt, but that his hands were never in his pocket. (R.pp. 70-71). Petitioner also contended that he did not understand when the plea judge was discussing life without parole and that it frightened him, and that with regard to his appeal, he was never contacted by an attorney regarding his appeal and that although the notice of appeal was filed, his appeal was dismissed. (R.pp. 72-74). Finally, Petitioner testified that he asked his PCR counsel



about subpoenaing a witness, but counsel told him that it would only hurt him. (R.p. 75).

Petitioner's plea counsel testified that he was prepared for trial when that Petitioner entered his guilty plea, and that he was surprised Petitioner decided to take the plea, because he never seemed interested in anything else. (R.p. 79). Counsel also testified that there were one or two frames on the video that he thought were going to "sink" them. (R.p. 80). Counsel testified that the question was whether or not Petitioner did something to make the clerk think that he had a gun, and he thought that he recalled the clerk thinking that he had a gun. Counsel also testified that he contacted the other witness in the store at the time of the robbery and that witness was not going to be helpful, because that witness thought Petitioner had a gun. (R.pp. 81-82, 90-91). Counsel thought that it was just going to be whether the jury gave them the benefit of the doubt, but that based on how Petitioner looked in the video, that he did not think the jury would do that. (R.p. 82). On cross examination, counsel clarified that since Petitioner's hands were not visible throughout the video, that the jury would have to believe his testimony that they were not in his pockets until he put the cash in there. (R.p. 93). Counsel testified that he did not see any basis for suppressing the video unless one of the state's witnesses did not show up. (R.pp. 86-87). However, in any event, counsel testified that he was prepared to try the case. (R.p. 82).

Counsel testified that he thought the burglary first change factored in because the Petitioner had two prior burglaries, which meant that the jury was going to hear about those two prior burglaries, that he was on drugs at the time, and the way that he looked at the time was not good. (R.p. 82). Further, despite Petitioner requesting counsel to file a motion to be relieved, counsel testified that he and Petitioner got along fine, that Petitioner would call him regularly, that he was an interesting client to have, and that he enjoyed representing Petitioner. (R.pp. 84-85).

17



With respect to Petitioner's mental state, counsel testified that the Department of Mental Health had found Petitioner fit to stand trial, and that he didn't think arguing to the jury that Petitioner was "just strung out and schizophrenic" at the time of the robbery was going to help Petitioner's defense. (R.p. 85). Counsel testified that he could tell sometimes when the Petitioner called him that he was not exactly following his medications as prescribed and was probably supplementing them with things that were not prescribed. However, on the morning of the plea, he did not believe there was any question that Petitioner knew what he was doing. (R.pp. 85-86, 90). Counsel testified that he remembered having a very lucid conversation with the Petitioner, and that he felt certain that he was competent at the time of the plea. (R.p. 86, 90). Counsel also testified that he went over the difference between the trial and plea and what rights that Petitioner would be giving up, and that he reviewed with the Petitioner the charges, indictments, and potential sentences that he was facing. (R.pp. 86, 88-89).

Counsel also testified that he filed the notice of intent to appeal; (R.p. 87); and the record includes a copy of plea counsel's letter dated September 24, 2009, informing Petitioner that he had filed his notice of intent to appeal, that he would not be filing anything else on his behalf, and that Petitioner had twenty (20) days to notify the Court of Appeals in writing of any arguable basis that there were issues preserved for appeal. See Court Docket No. 18.

The PCR court made the factual finding that plea counsel's testimony was credible, and Petitioner's testimony was not. (R.p. 107). Petitioner may overcome the presumption of correctness only by showing "clear and convincing evidence to the contrary."; Wilson v. Ozmint, 352 F.3d 847, 858-859 (4th Cir. 2003)(quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)(internal citations omitted)); and Petitioner offered no evidence in this proceeding to show that the state court erred in



finding that he was competent to enter his guilty plea. Cagle v. Branker, 520 F.3d 320, 324 (4th Cir. 2008)(citing 28 U.S.C. § 2254(e)(1)["for a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear"]); see 28 U.S.C. § 2254(e)(1); Marshall v. Lonberger, 459 U.S. 422, 434 (1983)["28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"]. The PCR judge found based on a review of the transcript and the testimony presented at the PCR hearing that there was no merit to Petitioner's claim that he was unaware of what he was doing on the day of his plea based on his assertion that he was not medicated, finding further that Petitioner failed to provide any evidence to prove a secondary mental evaluation was in fact performed, or to show that the results of that evaluation would have made a difference in Petitioner's decision to plead.[8] Petitioner has shown no basis for overturning the PCR court's findings on this issue. Rice v. Stevenson, No. 10-823, 2011 WL 767214 at * 5 (D.S.C. Jan. 13, 2011)(citing United States v. Truglio, 493 F.2d 574, 578 (4th Cir. 1974)[sustaining PCR court finding that petitioner presented no evidence regarding the effects of his medication at PCR aside from his own testimony, which the PCR court found not credible], adopted by, 2011 WL 766990 (D.S.C. Feb. 25, 2011).

Petitioner has also not shown that his trial counsel "colluded" with the solicitor and the plea court to have the applicant admit that he gave the impression to the robbery victim that he possessed a weapon to "qualify" the applicant for a plea to armed robbery. Based on a pretrial

---

[8]Although both Petitioner and trial counsel referred to a second mental examination, Petitioner did not introduce that examination at his PCR hearing. While Petitioner did attach an uncertified and electronically signed copy of a mental examination from May 30, 2009 to his pro se supplement to his Johnson petition, even assuming arguendo that that report was properly before the Court, it does not meet Petitioner's burden of showing that he was incompetent at the time of his guilty plea on September 8, 2009. See Court Docket No. 17-6, pp. 5-8.



interview with a witness in the store and the victim's statement to the police, plea counsel testified that although it would be a jury issue, he did not believe that the jury would give Petitioner the benefit of the doubt. (R.pp. 82, 90-91, 93). Further, at Petitioner's plea, the solicitor recited facts indicating that the clerk believed that Petitioner had a weapon, and when the plea court inquired as to whether Petitioner disagreed with any of the facts as stated by the State, Petitioner replied "No, ma'am." (R.pp. 16-19). Via, 643 F.2d at 171 [Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be]. Accordingly, Petitioner has not shown that his counsel was ineffective relating to this issue or that his counsel colluded in any way with the solicitor regarding the facts of the incident as represented to the plea court.

In sum, the record shows that Petitioner was competent to plead guilty, and Petitioner has offered no evidence to show how any further action on behalf of his counsel would have resulted in any different findings. To the contrary, other than his own unsupported speculation, which is contradicted by the record, Petitioner has offered no evidence to show that he was incompetent at the time of his guilty plea or that his counsel was ineffective in any manner relating to the armed robbery charge itself. See Jeter v. State, 417 S.E.2d 594, 596 (S.C.1992)[Petitioner has burden of proof to show he was incompetent at time of plea]. This claim is therefore without merit. Evans, 220 F.3d at 312 [Federal habeas relief will not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding]; Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1) [determination of a factual issue by the state court shall be presumed correct unless rebutted by clear and convincing evidence].

20



## II.

### (Ground Two)

With respect to Petitioner's Ground Two, Petitioner asserts a claim of ineffective assistance of appellate counsel due to counsel's failure to perfect his appeal. However, although Petitioner raised this issue in his PCR petition, it was not addressed by the PCR court's order and no motion to reconsider was filed, nor did he raise it in his PCR appeal. Accordingly, this issue was not properly preserved for review by this Court in Petitioner's APCR proceedings.[9] See White v. Burtt, No. 06-906, 2007 WL 709001 at *1 & *8 (D.S.C. Mar. 5, 2007)(citing Pruitt v. State, 423 S.E.2d 127, 127-128 (S.C. 1992)[issue must be raised to and ruled on by the PCR judge in order to be preserved for review]); cf. Cudd v. Ozmint, No. 08-2421, 2009 WL 3157305 at * 3 (D.S.C. Sept. 25, 2009)[Finding that where Petitioner attempted to raise an issue in his PCR appeal, the issue was procedurally barred where the PCR court had not ruled on the issue and Petitioner's motion to alter or amend did not include any request for a ruling in regard to the issue]; State v. Dunbar, 587 S.E.2d at 693-694 ["In order for an issue to be preserved for appellate review, it must have been raised to and ruled upon by the trial judge. Issues not raised and ruled upon in the trial court will not be considered on appeal."]; Miller v. Padula, No. 07-3149, 2008 WL 1826495 at **1-2 & **9-10 (D.S.C. Apr. 23, 2008); Sullivan v. Padula, No. 11-2045, 2013 WL 876689 at * 6 (D.S.C. Mar. 8, 2013)[Argument not raised in PCR appeal is procedurally barred]; see also Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n.3 (1971)[Discussing lower court's finding that failure to appeal denial of his state post-conviction petition constituted non-exhaustion of remedies]; Wicker

---

[9]Since, unlike Petitioner's armed robbery claim, this issue was *not* preserved, it was not reviewed by the state appellant court as part of its Johnson review of Petitioner's PCR record. Jamison v. State, 765 S.E.2d at 128-129; see also, n. 7, supra. .

21



v. State, 425 S.E.2d 25, 26 (S.C. 1992).

Since Petitioner did not properly exhaust this claim in his post conviction relief proceedings, it is barred from further state collateral review; Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 562 n. 3 (1971); Wicker v. State, 425 S.E.2d 25 (S.C. 1992); Ingram v. State of S.C., No. 97-7557, 1998 WL 726757 at **1 (4th Cir. Oct. 16, 1998); Josey v. Rushton, No. 00-547, 2001 WL 34085199 at * 2 (D.S.C. March 15, 2001); Aice v. State, 409 S.E.2d 392, 393 (S.C. 1991)[post-conviction relief]; and as there are no current state remedies for Petitioner to pursue this issue, it is fully exhausted. Coleman v. Thompson, 501 U.S. 722, 735, n.1 (1991); Teague v. Lane, 489 U.S. 288, 297-298 (1989); George v. Angelone, 100 F.3d 353, 363 (4th Cir. 1996) ["A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally defaulted under state law if the petitioner attempted to raise it at this juncture."], cert. denied, 117 S.Ct. 854 (1997); Aice, 409 S.E.2d at 393; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997) ["To satisfy the exhaustion requirement, a habeas Petitioner must fairly present his claim[s] to the state's highest court . . . the exhaustion requirement for claims not fairly presented to the state's highest court is technically met when exhaustion is unconditionally waived by the state...or when a state procedural rule would bar consideration if the claim[s] [were] later presented to the state court."], cert. denied, 522 U.S. 833 (1997); Ingram, 1998 WL 726757 at **1.

However, even though otherwise exhausted, because this issue was not *properly* pursued and exhausted by the Petitioner in the state court, federal habeas review of this claim is now precluded absent a showing of cause and prejudice, or actual innocence. Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309, 1316 (2012); Wainwright v. Sykes, 433 U.S. 72 (1977); Waye v. Murray,



884 F.2d 765, 766 (4th Cir. 1989), cert. denied, 492 U.S. 936 (1989).

> In all cases in which a State prisoner has defaulted his Federal claims in State court pursuant to an independent and adequate State procedural rule, Federal Habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of Federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman, 501 U.S. at 750.

In an apparent attempt to establish cause for his default, Petitioner argues in his memorandum in opposition that, to the extent his claim is procedurally defaulted, he should still be allowed to pursue it because any default is due to ineffective assistance of his PCR counsel. However, Petitioner has failed to establish entitlement to relief based on this argument.

The United States Supreme Court has held that "if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State . . . Ineffective assistance of counsel, then, is cause for procedural default." Murray, 477 U.S. at 488; see also Coleman v. Thompson, supra; McCleskey v. Zant, 499 U.S. 467, 494 (1991); Noble v. Barnett, 24 F.3d 582, 586, n.4 (4th Cir. 1994)["[C]onstitutionally ineffective assistance of counsel is cause per se in the procedural default context"]; Smith v. Dixon, 14 F.3d 956, 973 (4th Cir. 1994)(en banc). Even so, while ineffective assistance of counsel can constitute "cause" for a procedural default, it will only constitute "cause" if it amounts to an independent violation; Ortiz v. Stewart, 149 F.3d 923, 932 (9th Cir. 1998); Bonin v. Calderon, 77 F.3d 1155, 1159 (9th Cir. 1996); and ineffective assistance of PCR counsel (as opposed to trial or direct appeal counsel) does not amount to an independent constitutional violation, and ordinarily would not therefore constitute "cause" for a procedural default. Murray v. Giarratano, 492 U.S. 1-7,



13 (1989) [O'Connor, J., <u>concurring</u>] [ "[T]here is nothing in the Constitution or the precedents of [the Supreme] Court that requires a State provide counsel in postconviction proceedings. A postconviction proceeding is not part of the criminal process itself, but is instead a civil action designed to overturn a presumptively valid criminal judgment. Nothing in the Constitution requires the State to provide such proceedings,...nor does...the Constitution require [ ] the States to follow any particular federal model in those proceedings."]; <u>Mackall v. Angelone</u>, 131 F.3d 442, 447-449 (4th Cir. 1997); <u>Ortiz</u>, 149 F.3d at 932; <u>Pollard v. Delo</u>, 28 F.3d 887, 888 (8th Cir. 1994); <u>Lamp v. State of Iowa</u>, 122 F.3d 1100, 1104-1105 (8th Cir. 1997); <u>Parkhurst v. Shillinger</u>, 128 F.3d 1366, 1371 (10th Cir. 1997); <u>Williams v. Chrans</u>, 945 F.2d 926, 932 (7th Cir. 1992); <u>Gilliam v. Simms</u>, No. 97-14, 1998 WL 17041 at *6 (4th Cir. Jan. 13, 1998).

      The Supreme Court in <u>Martinez</u> did carve out a "narrow exception" that modified

> "the unqualified statement in <u>Coleman</u> that an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default." <u>Martinez</u>, 566 U.S. at __, 132 S.Ct. at 1315. [F]or three reasons. First, the "right to the effective assistance of counsel at trial is a bedrock principle in our justice system . . . . Indeed, the right to counsel is the foundation for our adversary system." <u>Id.</u> at ___, 132 S.Ct. at 1317.

> Second, ineffective assistance of counsel on *direct appellate review* could amount to "cause", excusing a defendant's failure to raise (and thus procedurally defaulting) a constitutional claim. <u>Id.</u> at ___, 132 S.Ct. at 1316, 1317. But States often have good reasons for initially reviewing claims of ineffective assistance of trial counsel during state collateral proceedings rather than on direct appellate review. <u>Id.</u> at ___, 132 S.Ct. at 1317-1318. That is because review of such a claim normally requires a different attorney, because it often "depend[s] on evidence outside the trial record," and because efforts to expand the record on direct appeal may run afoul of "[a]bbreviated deadlines," depriving the new attorney of "adequate time . . . to investigate the ineffective-assistance claim." <u>Id.</u> at ___, 132 S.Ct. at 1318.

> Third, where the State consequently channels initial review of this constitutional claim to collateral proceedings, a lawyer's failure to raise an ineffective assistance of counsel claim during initial-review collateral proceedings, could (were <u>Coleman</u> read broadly) deprive a defendant of any review of that claim at all. <u>Martinez</u>, <u>supr a</u> at



___, 132 S.Ct. at 1316.

We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding." Martinez, supra at ___, 132 S.Ct. at 1318-1319, 1320-1321.

Trevino v. Thaler, 133 S.Ct. 1911, 1917-1918 (2013); see also Gray v. Pearson, 526 Fed. Appx. 331, 333 (4th Cir. June 7, 2013)["The Supreme Court had previously held in Coleman that because a habeas petitioner has no constitutional right to counsel in state post-conviction proceedings, the ineffectiveness of post-conviction counsel *cannot* establish 'cause' to excuse a procedural default. Coleman, 501 U.S. at 757. The Court established an exception to that rule in Martinez."]

However, while Martinez carved out an exception to defaulted ineffective of *trial* counsel claims, numerous courts have addressed the issue of whether the Martinez exception applies to ineffective assistance of *appellate* counsel and found that it does not. Reed v. Stephens, 739 F.3d 753, 778 n. 16 (5th Cir. 2014)[court declined to consider ineffective assistance of appellate counsel under Martinez]; Ponis v. Hartley, 534 Fed.Appx. 801, 805-806 (10th Cir. Aug. 27, 2013)[Ruling that ineffective assistance of appellate counsel claim could not be rescued by the Martinez exception which the Court found was a "narrow exception" that applies only with respect to "cause for a prisoner's procedural default of a claim of ineffective assistance at trial."]; Hodges v. Colson, 727 F.3d 517, 531 (6th Cir. 2013)[PCR counsel cannot supply cause under Martinez for procedural default of ineffective assistance of appellate counsel claim]; Banks v. Workman, 692 F.3d 1133, 1148 (10th Cir. 2012); Brown v. Warden of Perry Correctional Institution, No. 12-2988, 2014 WL 4793707 at



* 5 (D.S.C. Sept. 25, 2014)[court declined to consider ineffective assistance of appellate counsel under Martinez]; cf. Gore v. Crews, 720 F.3d 811, 815-816 (11th Cir. 2013)[Not applying Martinez in circumstances not involving ineffective assistance of trial counsel]. But see H Van Nguyen v. Curry, 736 F.3d 1287, 1289 (9th Cir. 2013)[applying Martinez to ineffective assistance of appellate counsel claim]. Therefore, although this issue has not yet been addressed by the Fourth Circuit Court of Appeals, under the greater weight of this case authority, Petitioner's claim of ineffective assistance of appellate counsel would be analyzed under the traditional Coleman v. Thompson analysis to determine if there was the necessary cause and prejudice shown, and since Petitioner did not properly raise and preserve this claim in his APCR, and no "cause" has been established, it is defaulted under Coleman.

Finally, to the extent Petitioner is arguing that he is actually innocent, cognizable claims of "actual innocence" are extremely rare and must be based on "factual innocence not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998); see also Doe v. Menefee, 391 F.3d 147 (2d Cir. 2004). Petitioner has failed to present any new, reliable evidence of any type that was not presented in any of his prior court proceedings which supports his innocence on the criminal charges on which he was found guilty. See Schlup v. Delo, 513 U.S. 298, 324 (1995)[to present a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."]; Doe, 391 F.3d at 161 (quoting Schlup for the evidentiary standard required for a court to consider an actual innocence claim). Further, Petitioner has also failed to make any showing that a fundamental miscarriage of justice will occur if any of his defaulted claims are not considered. Wainwright v.

26



<u>Sykes</u>, <u>supra</u>; <u>Murray v. Carrier</u>, 477 U.S. 478 (1986); <u>Rodriguez</u>, 906 F.2d at 1159 [a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent"](citing <u>Murray v. Carrier</u>, 477 U.S. at 496); <u>Sawyer v. Whitley</u>, 505 U.S. 333, 348 (1992); <u>Bolender v. Singletary</u>, 898 F.Supp. 876, 881 (S.D.Fla. 1995).

Therefore, Ground Two is procedurally barred from consideration by this Court, and must be dismissed.

**<u>Conclusion</u>**

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that the Petition be **dismissed**, with prejudice.

The parties are referred to the Notice Page attached hereto.



_____
    Bristow Marchant
    United States Magistrate Judge

June 29, 2015
Charleston, South Carolina

27

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



28